James 0< Shackeleoed, J.,
delivered the opinion of the Court.
This is an action brought against the defendant, for- failing to deliver goods received by him as a common carrier. It appears from the record, the defendant was the owner of the Steamboat “Prince of Wales,” running between the port of New Orleans and the City of - Cairo, in the State of Illinois. On the 15th of May, *369 1861, the plaintiffs being citizens of Ohio, there was shipped to them, to the care of Benedict & Sons, Louisville Ky., a lot of hides and peltries, valued at $1,390, which were received on the boat of the defendant, and for which a bill of lading was duly signed; the defendant engaging to deliver them in Louisville, Ky., “the dangers of navigation and fire, alone excepted.” Before reaching Memphis, the authorities of that place were notified of the coming of the boat; a battery of guns were placed upon the bank of the river; upon the approach of the boat two shots were fired across her bow, and she was compelled to land; immediately after, she was boarded by a body of armed men, under the command of an officer. The goods of the plaintiff were taken, ' and the boat seized. The City of Memphis was under the command of General Pillow, and large bodies of troops were in the city. Forts were being erected on the banks of the Mississippi river, at Eandolph, above Memphis. Great excitement prevailed; the United States Courts were closed, and the authority of the Federal government overthrown. On the trial of the cause, the Court, in substance, charged the jury, among other things not excepted to — if they find from the evidence, that at the time and before the seizure of said goods, the citizens of the State of Tennessee were laboring under great excitement; that large numbers of the inhabitants had armed and organized themselves into military companies and regiments, and that others were rapidly arming and organizing; that the chief offices of the State were in the hands of these organizations, or of per *370 sons affiliating or operating with them; that forts were being built, and the United States property being seized by them; that all these things were in open and avowed hostility to the Federal government., for the purpose of opposing an armed resistance to the execution of the laws, or for the purpose of making common cause with the insurgents of the other Southern States; and that these insurrectionary proceedings had been pushed to such an extent within the State of Tennessee, that her power was in fact, in the hands, and under the control of these conspirators, and the government in their hands, her soil in their possession, the regular course of justice interrupted, so that loyal courts could not be kept open, nor protection given to loyal men without the interference of military power, and that the Federal government was marshaling her forces for the purpose of asserting the national sovereignty; if these insurrectionary combinations existed in the State of Tennessee, a civil war was then pending between the general government and such unlawful combination; and if the jury find such armed force took the goods out of the possession of the defendant, was a recognized part of such unlawful combination; that such force will be regarded as public enemies, and they will find for the defendant. The jury returned a verdict for the defendant, a new trial was moved for, the motion overruled; from which there was an appeal to this Court.
The question presented is one of grave consideration. It is a well settled principle in our jurisprudence, a common carrier is bound to deliver goods intrusted to *371 him; at all events, be is only excused by tbe act of God and tbe public enemy. Tbe responsibility imposed by tbe common law upon them is derived mainly from tlieir public employment, and tbeir responsibility cannot be avoided by any degree of diligence. He is regarded by tbe law as tbe insurer of tbe property intrusted to bim. In other words, he is legally responsible for acts against which be could not provide, from whatever cause, except those embraced in his contract, and the act of God and tbe public enemy. The loss or damage done to tbe property in his possession to be carried, is, of itself, sufficient proof of negligence. Everything is negligence which tbe law does not excuse; so that, in all cases he will be held liable except those just mentioned. This doctrine has been firmly established in the English courts; and no question has been more clearly defined and settled in our American jurisprudence, than that a common carrier is responsible for all losses except those occasioned by the act of God and the public enemy.
Mr. Story, in his work on Bailments, sec. 489, says: “By the act of God, a phrase which, perhaps, habit has rendered too familiar to us, is meant, inevitable accident or casualty; and by the king’s enemy, is -meant, public enemies, (with whom the nation is at war.”) Apply these principles to the case under consideration. The defendant was the owner of the steam vessel upon which the goods were shipped, to be transported to Louisville, for a certain sum, to be paid on delivery of the goods. 'He clearly falls within the rules of law *372 that constitute him a common carrier. Being such, does the proof and rules of law applicable to the case, exonerate him from responsibility in not delivering the property shipped upon the vessel of which he was the master and owner? He is clearly liable unless he was prevented by the act of God or the public enemy. By enemies, is not to be understood thieves and robbers, but open and armed enemies; those in hostility to the government. It was held in the English Courts that rioters and insurgents were not public enemies in the sense of the law upon this subject. Lord Holt says, in the case of Cobbs vs. Barnard, 2 Salk, 919, “though the force be never so great, as if an irresistible multitude of persons rob him, the carrier is, nevertheless, chargeableThe same principle was settled in the case of Forward vs. Pittard, 1 Term Rep., 27; but where there is a regular organized force in armed hostility to the government, and the authority of the government for the time overthrown, the .principle stated in the case of Cobbs vs. Barnard, does not apply: Mauran vs. Alliance Insurance Co., 6 Wall, p. 1. It appears from this record, that, on the 15th of May, 1861, the boat of the defendant 'received her cargo at New Orleans. Before reaching the City of Memphis the military organization in the possession of that city, had been telegraphed of the approach of the vessel. A battery was planted upon the banks of the river; upon the arrival of the vessel, two shots were fired across her bow, and the defendant was compelled to land. Immediately thereafter, the vessel was boarded *373 by armed men under the charge of an officer, who was acting under the authority of the organization in hostility to the United States, who seized the boat, and took off the property of the plaintiffs.
The people of the State of Tennessee were then in open hostility to the Federal authorities; armed organizations had been formed and were forming throughout the State; the authority of the Federal Government was, for a time, overthrown; a league had been formed, offensive and defensive, with the other Southern States; the United States was marshaling its forces to assert its sovereignty; the territory of the State was held by a line of bayonets in hostility to the Federal Government; that government had not proclaimed a state of war, but in fact, as we judicially know, a civil war did exist on the 20th of May, 1861. War is simply the exercise of force by bodies politic against each other for the purpose of coercion. In the prize cases, 2 Black., 666, the Court says: “insurrection against a government may or may not culminate in an organized rebellion; but civil war always begins by insurrection against the lawful authority of the government. A civil war is never solemnly declared; it becomes such by its accidents; the number, power, and organizations of the persons who originate and carry it on. When the party in rebellion occupy and hold, in a hostile manner, a certain^ portion .of territory; have declared their independence; have cast off their allegiance; have organized armies; have commenced hostilities against their former sovereign, the world acknowledges them. as belligerents, and the contest, a war.”
*374 Sucb are the principles announced by the highest judicial tribunal of the nation. From the facts presented in this case, at the time of the seizure of the property of the plaintiff, war existed; and the property was taken from the possession of the defendant by the public enemies of the government. The Southern States, including Tennessee, were, by the repeated decisions of the Supreme Court of the United States, declared to be public enemies. It follows, therefore, that, on the 20th of May, 1861, at .the time the property was seized, the people of the State of Tennessee were public enemies, within the sense of the term; and the defendant is excused for the' non-delivery of the property, it having been taken by those in hostility to the government.
The charge of His Honor is a just exposition of the law governing the case, in which there is no error; and the judgment must be affirmed.